Paul J. Lopach
BRYAN CAVE LEIGHTON PAISNER LLP
1700 Lincoln Street, Suite 4100
Denver, Colorado 80203-4541
Telephone:  (303) 861-700
Facsimile:  (303) 866-0200
Email:       paul.lopach@bclplaw.com

*Attorneys for Plaintiffs William Fenech, Jonathan Helmuth, Pinball Run Films, LLC, Jennifer Shenk, Jeffrey Shenk, Kent Oyer, And MX Guardian, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| WILLIAM FENECH, JONATHAN HELMUTH, PINBALL RUN FILM, LLC, JENNIFER SHENK, JEFFREY SHENK, KENT OYER, and MX GUARDIAN, LLC, | CV _____ |
| Plaintiffs, | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | |
| KRISTINA HOGAN, THE ESTATE OF BRANDON KEITH HOGAN, PARADOX FILM GROUP, LLC, FAST JET DISTRIBUTION LLC, RED DEVIL SKYMASTER LLC, and OTHER JANE DOE ENTITIES 1 THROUGH 10, | |
| Defendants. | |

Plaintiffs William Fenech, Jonathan Helmuth ("Helmuth"), Pinball Run Film, LLC, Jennifer Shenk, Jeffrey Shenk, Kent Oyer, and MX Guardian, LLC (collectively, "Plaintiffs"), by and through their undersigned attorneys, allege the following in support of their Complaint against defendants Kristina Hogan ("Kristina"), the Estate of Brandon Hogan ("Hogan Estate," and, collectively with Kristina, "Hogan Defendants"), Paradox Film Group, LLC ("Paradox Film"), Fast Jet Distribution LLC ("Fast Jet"), Red Devil Skymaster LLC ("Red Devil"), and Other Jane Doe Entities 1 through 10 ("Other Jane Doe Entities," and collectively with other defendants, "Defendants"), and allege as follows:

## INTRODUCTION

1.      Defendants Brandon and Kristina Hogan enticed Plaintiffs with the prospect of making substantial returns by participating in the financing and development of purported film projects.  They set up two financing vehicles, ostensibly for this purpose, with the fanciful names of Paradox Film Group, LLC and Fast Jet Distribution LLC.  After receiving an initial round of financing from one Plaintiff, Jonathan Helmuth, the Hogan Defendants told Helmuth that he had obtained a substantial return within months, leading Helmuth to believe that the Hogan Defendants were both legitimate and capable film financers and developers. With such a fast return, and such a seemingly promising business, the Hogan Defendants induced Helmuth to leave his principal and his purported returns in the

2

financing vehicle, with the promise of an even greater return in the future, and invited more financing from the other Plaintiffs.  As they obtained more and more funds from the Plaintiffs, the Hogan Defendants enthusiastically reported various projects "under development."

2.      However, many of these projects never materialized.  Upon information and belief, after Brandon Hogan passed away, it became clear that many of these projects were, in fact, fabricated – and that, indeed, the business the Hogan Defendants promoted was not legitimate.  Upon information and belief, the financing vehicles were part of a Ponzi scheme, in which the only "returns" available to repay the debt owed to earlier investors were from funds contributed by subsequent ones.  Upon information and belief, contrary to their representations, the Hogan Defendants had not been using the funds deposited by Plaintiffs to finance films – but, rather, to finance their own lifestyle.  Upon information and belief, the Hogan Defendants made frequent wire and other transfers in large amounts from the purported film financing vehicles to their personal accounts, including a wire of about $170,000 to purchase their family home and another payment of about $58,000 to purchase a private airplane.

3.      By this action, Plaintiffs seek recovery of the funds that were fraudulently transferred to the Hogan Defendants and damages for related claims of fraud and conversion, among other claims, against the Defendants, as well as all

3

applicable interest, attorneys' fees, and punitive damages for their egregious misconduct, to the extent available under applicable law.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332 based on diversity of citizenship and an amount in controversy exceeding $75,000.

5.      Defendants are subject to personal jurisdiction in this District because certain Defendants reside in this District and a substantial portion of the events giving rise to the claims occurred in this District.  Specifically, Brandon Hogan resided in this District with Kristina Hogan before Brandon passed away.  Upon information and belief, the fraudulent transfers were made within the District to purchase property within the District.  Moreover, Paradox Film and Red Devil are Montana limited liability companies, and Paradox Film, Fast Jet, and Red Devil all conducted business within this District.

6.      Venue is proper in this District under 28 U.S.C. § 1391(b) because, upon information and belief, Defendants reside in this District and/or a substantial part of the events or omissions giving rise to the claims asserted occurred in this District.

## PARTIES

7.      At all times relevant to this complaint, Plaintiff William Fenech has been, and is, a citizen of Florida, residing in Naples, Florida.

8.      At all times relevant to this complaint, Plaintiff Jonathan Helmuth has been, and is, a citizen of Michigan, residing in Vandalia, Michigan.

9.      At all times relevant to this complaint, Plaintiff Pinball Run Film, LLC ("Pinball Run Film") is a limited liability company that has been, and is, a citizen of Michigan.  Pinball Run Film is organized in Michigan, with its principal place of business in Michigan.  Pinball Run Film's sole member is Helmuth.

10.      At all times relevant to this complaint, Plaintiffs Jennifer Shenk and Jeffrey Shenk have been, and are, citizens of Indiana, residing in Goshen, Indiana.

11.      At all times relevant to this complaint, Plaintiff Franklin Kent Oyer has been, and is, a citizen of Illinois, residing in Chicago, Illinois.

12.      At all times relevant to this complaint, Plaintiff MX Guardian, LLC ("MX Guardian") is a limited liability company that has been, and is a citizen of Illinois.  MX Guardian is organized in Illinois, with its principal place of business in Illinois.  MX Guardian's sole member is Oyer.

13.      Defendant Kristina Hogan, upon information and belief, is now a citizen of Virginia, residing in Henrico, Virginia.  Upon information and belief, at all other times relevant to this complaint, prior to moving to Henrico, Virginia in or

about January 2021, Kristina was a citizen of Montana, and resided in and

conducted substantial business related to this action in Helena, Montana.

14.    At all times relevant to this complaint, Brandon Keith Hogan was,

upon information and belief, a citizen of Montana, who resided in Helena,

Montana, and died on July 30, 2020.  Upon information and belief, James Hogan

was appointed as a representative of Defendant the Estate of Brandon Keith Hogan

on or about March 29, 2021.   Prior to Mr. Hogan's appointment, Kristina Hogan

acted as the representative of the Hogan Estate.  Upon information and belief, the

Hogan Estate is the sucessor-in-interest to Brandon Hogan with respect to, among

other things, his assets and liabilities.  Upon information and belief, the Hogan

Estate is a citizen of Montana.

15.    At all times relevant to this complaint, Defendant Paradox Film has

been, and is, a limited liability company, and upon information and belief, is a

citizen of Montana, organized in the State of Montana with its principal place of

business purportedly in Helena, Montana.  Upon information and belief, Paradox

Film's sole member was Brandon Hogan before he died.

16.    At all times relevant to this complaint, Defendant Fast Jet Distribution

LLC ("Fast Jet") has been, and is, a limited liability company, and upon

information and belief, is a citizen of California, organized in the State of

California with its principal place of business in Los Angeles, California.  Upon

information and belief, Fast Jet's sole member was Brandon Hogan before he died. Upon information and belief, Fast Jet is no longer an active limited liability company in good standing with California, but according to records of the Secretary of State, Fast Jet is currently suspended.

17.     At all times relevant to this complaint, Defendant Red Devil Skymaster LLC ("Red Devil") has been, and is, a limited liability company, and upon information and belief, is a citizen of Montana, organized in Montana, with its principal place of business in Helena, Montana.  Upon information and belief, Red Devil's sole member was Brandon Hogan before he died.

18.     Upon information and belief, Defendants Other Jane Doe Entities 1 through 10 ("Other Entity Defendants") are other legal entities, the names and addresses of residences of which are unknown.

19.     Collectively, Paradox Film Group, Fast Jet Distribution, Red Devil, and the Other Entity Defendants are referred as the "Entity Defendants."

20.     Plaintiffs seek relief against all Defendants, as well as against their agents, assistants, successors, employees, and all persons acting in concert or cooperation with them or at their direction or under their control.

## FACTUAL ALLEGATIONS

**A.**     **Background**

21.     In early 2016, Helmuth met Brandon Hogan ("Brandon") and, subsequently, his wife Kristina following a film screening at Sundance Film Festival for a movie in which both Helmuth and Brandon shared executive producer credits.

22.     Over the course of 2016, Brandon proposed a business relationship among Helmuth, Kristina, and Brandon to finance and develop films. The Hogan Defendants represented to Helmuth that Brandon, with 25 years of experience in the film industry, would identify and negotiate projects in the film industry to finance, and that Kristina, an experienced lawyer, would provide legal advice and guidance. In exchange, the Hogan Defendants asked Helmuth to provide his own funds as initial financing and to obtain additional financing from others. In this regard, Brandon and Kristina made it clear that Helmuth was expected to spend his personal time and resources in his role.

23.     Helmuth, as well as the company he created and used to finance this purported business, Pinball Run Film LLC, relied on Brandon's and Kristina's representations that they intended to use Helmuth's and other investors' funds to finance movie projects and that they were using those funds for that purpose.

24.     In this relationship, Helmuth was led to believe that he would receive a reasonable compensation for his efforts.  However, Helmuth never was given any actual control over the business or its finances.  Brandon represented to Helmuth on multiple occasions starting on or about 2018 and thereafter that Helmuth would receive compensation through a substantial return on the funds he provided to finance this business and in return for his personal work contributions.  Helmuth relied on the Hogan Defendants' representations.

25.     Helmuth's reliance on the Hogan Defendants' representations was reasonable given, among other things, Brandon's experience in the film industry and Kristina's experience as a lawyer and, in particular, a lawyer that represented the film financing companies.

**B.      Financing of Purported Film Development
         Projects and Purported Initial Returns**

26.     On information and belief, purportedly to facilitate the financing of the movie projects, Brandon and/or Kristina set up at least two entities as financing vehicles in which Helmuth and the other Plaintiffs were to deposit funds:  Paradox Film and Fast Jet.  In addition, upon information and belief, Brandon and/or Kristina created other entities, the Other Entity Defendants, purportedly to facilitate the financing and/or development of movies.

27.     In addition to investing his personal time and expenses in the Hogans' purported movie financing business, on May 28, 2016, Helmuth deposited

9

$100,000, through Helmuth's company, Plaintiff Pinball Run Film LLC, into Fast Jet's account (upon information and belief, an account held in California). Brandon promised Helmuth that he would receive a return in interest payments in the amount of approximately 20% in addition to his original deposit amount.

28.     Brandon and Kristina reported to Helmuth that Fast Jet had made a return on this initial deposit within months after it was made.  Purportedly, this was due to a film called "Acts of Violence."

29.     Based on the purported success of the purported business, the Brandon Defendants suggested that, rather than distributing his purported return, Helmuth "reinvest" that return.  In reliance on this purported success, Helmuth agreed that, rather than receive his purported return, Brandon and Kristina could use that return as additional financing to expand the purported movie financing and development business.

30.     Also in reliance on this purported success, Helmuth introduced other interested parties, the other Plaintiffs in this action, to finance Brandon's and Kristina's purported movie financing and development business.

31.     The other interested parties, Plaintiffs William Fenech ("Fenech"), Jennifer Shenk and Jeffrey Shenk (collectively, "Shenks"), and Kent Oyer ("Oyer"), as well as the company Oyer used to provide this financing, MX Guardian, relied on representations by Brandon and Kristina, both directly and in

representations conveyed by the Hogan Defendants through Helmuth, that their funds would be used to finance and develop movies.  Such reliance was reasonable because, among other reasons, these other Plaintiffs, like Helmuth, understood and relied upon Brandon's experience in the film industry and Kristina's experience as a lawyer for the film financing companies.

32.     In reliance on the Hogan Defendants' representations, Fenech made two deposits totaling $1 million to finance the Hogan Defendants' purported movie financing business.  Fenech made two deposits, each in the amount of $500,000, into Fast Jet's account (upon information and belief, an account held in California): the first on March 2, 2017 and the second on August 8, 2018.  Brandon promised Fenech that he would receive a return in interest payments in the amount of approximately 15% in addition to the return of his original deposit amount.[1]

33.     In reliance on the Hogan Defendants' representations, the Shenks made two deposits totaling $301,000 to finance the Hogan Defendants' purported movie financing business.  The Shenks made their first deposit, in the amount of $200,000, into Paradox Film's account (upon information and belief, an account held in Montana), on September 5, 2019, and their second deposit, in the amount of $101,000, into Paradox Film's account, on February 18, 2020.  Brandon

---

[1]      As explained below, Helmuth discovered much later that, upon information and belief, the Hogans used the accounts of Paradox Film and Fast Jet interchangeably because these purported financing vehicles, along with Other Entity Defendants, were part of a Ponzi scheme.

promised the Shenks that they would receive a return in interest payments in the amount of approximately 12.5% in addition to the return of their original deposit amount.

34.     In reliance on the Hogan Defendants' representations, Oyer made two deposits, both through his company, MX Guardian, to finance Brandon's and Kristina's purported movie financing business.  MX Guardian made two deposits, both in the amount of $100,000, into Paradox Film's account (upon information and belief, an account held in Montana):  the first on June 12, 2019, and the second on February 18, 2020.  Brandon promised Oyer and MX Guardian that they would receive a return in interest payments in the amount of approximately 20% in addition to the return of their original deposit amount.

35.     During this time, Brandon represented to the Plaintiffs that numerous films and potential projects were "under development" with various film stars and film creators.  Kristina acted in concert with Brandon, participating in meetings and maintaining the illusion that she and Brandon were running a movie financing and development business.

36.     As one example, on August 29, 2018, following Fenech's substantial deposits to the Hogan Defendants, Brandon transmitted an email to Fenech, stating, "In short here are the projects that have loans out on, and Husky:

       "Escape Plan 3"          $300,000 USD

| "Itzy Bitzy" | $185,000 USD  (we own 5% of this movie too) |
| "Tales of Green Berets" | $232,000 USD |
| "Operation Husky" | $88,000 USD   (Not a Loan) |
| We have in the bank: | $248,000 USD" |

37.     As another example, on December 16, 2019, in an email responding to Oyer's request regarding the status of his investment, Brandon stated that, "As for your investment with us we will not be able to get you the investment back before the end of 2019 years end as we have the capital deployed for six (6) weeks on a project."

38.     As another example, on March 12, 2020, Brandon transmitted an email to Jeffrey Shenk, advising that "Were [*sic*] not skipping a beat on our end and were [*sic*] invested in a few projects at the moment."

39.     The Plaintiffs relied on these and other representations by the Hogan Defendants about the purported film and development business, in providing both initial and subsequent financing and in refraining from seeking to withdraw their funding.

**C.     Discovery of Improper Use of Funds from Purported Financing Vehicles to or for the Personal Benefit of Kristina and Brandon Hogan**

40.     Over time, however, the Plaintiffs started to become impatient with the lack of returns, other than the initial purported returns that Brandon reported and

which Helmuth had "reinvested" following the Hogan Defendants' promises of substantial returns.

41.    In or about February 2019, the Hogan Defendants represented to Helmuth and other investors that the Hogan Defendants were promoting a new project related to their purported movie financing and development business, which used digital tokens to allow investors to track their movie investments.  In connection with this purported project, the Hogan Defendants formed Bloq Flix, LLC, which was later renamed as BLOCK FLIX LLC (upon information and belief, a Montana limited liability company).  Upon information and belief, Kristina Hogan is the registered agent for BLOCK FLIX LLC, and held herself out as a fiduciary for that company.

42.    Also in or about July 2020, the Hogan Defendants represented to Helmuth that Brandon was taking a trip to Jackson, Wyoming, to meet with an important investor to discuss financing.  According to the Hogan Defendants, this financing would indirectly expand the Hogan Defendants' purported movie financing and development business, and would be used, in part, to pay off the Plaintiffs.

43.    On July 30, 2020, during his flight to Jackson, Wyoming, the plane Hogan had purchased months earlier crashed and Brandon died.

14

44.     Shortly thereafter, on or about August 5, 2020, Helmuth traveled to the Hogan Defendants' home in Helena, Montana.

45.     In or about mid-August 2020, Helmuth traveled to the office of Paradox Film in Helena, Montana to clean up and organize the papers in light of Brandon's sudden death.

46.     While at the office of Paradox Film, Helmuth discovered, to his great surprise, that many, if not most or all, of the funds that the Plaintiffs had deposited with Paradox Film and Fast Jet were not used to finance or develop movies, but instead were used to purchase personal items for the Hogan Defendants, pay their personal bills and fund aspects of their personal lives.

47.     Upon information and belief, the Hogan Defendants made numerous improper transfers from Paradox Film and Fast Jet, and/or affiliated entities including Other Entity Defendants, amounting to hundreds of thousands of dollars, to themselves or for their personal benefit (collectively, "Improper Transfers").

48.     Upon information and belief, these Improper Transfers included:

   (a)     a wire transfer in March 2018, in the amount of approximately $170,000 from Fast Jet to purchase the Hogan Defendants' personal house; and

   (b)     a purchase of a private airplane (the plane which crashed), in the amount of approximately $58,000, in or about March 2020, through Red Devils LLC, another entity the Hogan Defendants created;

49.     Upon information and belief, these Improper Transfers also included :

(a)    regular wire transfers, in large amounts, transferring funds from Paradox Film and Fast Jet and affiliated entities' film accounts to the Hogan Defendants' personal accounts;

(b)    payments for airplane flying lessons from the Paradox Film account;

(c)    purported "reimbursements" to Kristina for purchases of various personal and family items;

(d)    multiple payments for meals, lodging, travel and other personal expenses, made through corporate credit cards, for expenses not related to the Hogan Defendants' purported movie financing and development business; and

(e)    numerous payments to other parties not related to the Hogans' purported movie financing and development business, and believed to be for the Hogan Defendants' personal benefit.

50.    Upon information and belief, the Hogan Defendants never provided any funds or anything else of value in exchange for the Improper Transfers.

51.    When Helmuth confronted Kristina regarding some of the Improper Transfers, Kristina admitted that funds from the Entity Defendants were used for personal expenses and she did not dispute that the Improper Transfers were in fact made to or for her and Brandon.

52.    Upon information and belief, the Hogan Defendants never intended to use the funds obtained from Helmuth or the other Plaintiffs to finance or materially develop movie projects, and never did so.  Instead, the Hogan Defendants used these funds to purchase their residence, a private plane, and to finance their personal expenses.

16

53.     In fact, upon information and belief, the Hogan Defendants' purported movie financing and development business was part of a Ponzi scheme, in which the purported returns were fabricated and the only funds that would have been available to pay Plaintiffs were contributions from other Plaintiffs.

54.     Upon information and belief, the Hogan Defendants, both directly and through the Entity Defendants, deliberately hid each of the Improper Transfers from the Plaintiffs until Helmuth discovered documents relating to certain of them in mid-August 2020.

## D.      **Hogan Estate's Refusal to Return Funds to Plaintiffs**

55.     In or about early May 2021, Plaintiffs learned that, while there were virtually no funds left in Fast Jet's bank accounts, Paradox Film still had $462,000 in its checking and savings accounts (upon information and belief, in Montana). Plaintiffs also learned that the funds in the Paradox Film account had decreased from $535,000 to $462,000 during the period July 2020-January 2021.  Upon information and belief, these funds were used for Kristina's personal benefit, including, without limitation, approximately $76,000 of legal fees in connection with the proceedings involving Brandon's Estate.

56.     Several times in and after May 2021, Plaintiffs, through their counsel, requested that the counsel for the Hogan Estate return those funds to Plaintiffs.

57.     However, despite repeated requests, the Hogan Estate and Paradox Film refused to return these funds to Plaintiffs.  Since Brandon had passed away, upon information and belief, Paradox Film could not have been conducting business in the period July 2020 through January 2021, and Plaintiffs suspect that Kristina Hogan improperly withdrew funds from the Paradox Film accounts during that period for her personal use.

**E.     <u>Harm Suffered by Plaintiffs</u>**

58.     None of the Plaintiffs were paid back any of the funds that they deposited with Paradox Film or Fast Jet.  Nor have Plaintiffs received any actual interest or other returns on their investments.

59.     In addition, Helmuth has never been compensated or received any reimbursement for his investment of time and personal expenses in connection with the Hogan Defendants' purported movie financing and development business, which was, upon information and belief, a Ponzi scheme.

60.     As a result, the Plaintiffs have suffered damages in excess of $2 million, including interest due and reimbursement of expenses promised, as a result of Defendants' misconduct.

## COUNT ONE
### Fraud
### (against All Defendants)

61.     Plaintiffs incorporate and repeat the allegations of the foregoing paragraphs as if fully set forth herein.

62.     The Hogan Defendants, both directly and/or through the Entity Defendants, repeatedly represented that they intended to use the funds they requested and received from Plaintiffs to finance and develop movies and, subsequently, repeatedly represented that such funds were being used for that purpose.  The Hogan Defendants even repeatedly represented specific information about movies under development that, upon information and belief, were completely fabricated.

63.     Upon information and belief, these representation were false.  In fact, upon information and belief, the Hogan Defendants never used the funds received from the Plaintiffs to finance or develop movies or intended to do so, but, rather, used those funds for personal gain, including the purchase of a house and a plane.

64.     The Defendants' misrepresentations were material.

65.     Upon information and belief, Defendants knew of the representations' falsity and/or were ignorant of the truth of those representations.

66.     The Defendants intended that their representations should be acted upon by the Plaintiffs and in the manner reasonably contemplated, namely that the

Plaintiff would deposit funds with the Defendants and not seek the return of their funds.

67.    Plaintiffs were ignorant of the Defendants' representations' falsity until at least mid-August 2020.

68.    Plaintiffs relied upon the truth of the Defendants' representations.

69.    Plaintiffs had a right to rely upon Defendants' representations.

70.    Plaintiffs were directly and proximately damaged by their reliance on Defendants' representations.  Among other things, Plaintiffs were induced to deposit substantial funds with Defendants and to refrain from seeking repayment of those funds while Defendants continued to engage in their misrepresentations.

**COUNT TWO**
**Avoidance and Recovery of the Improper Transfers as**
**Intentional Fraudulent Transfers Pursuant to Applicable State Law**
**(against the Hogan Defendants and Subsequent Transferees)**

71.    Plaintiffs incorporate and repeat the allegations of the foregoing paragraphs as if fully set forth herein.

72.    Plaintiffs were, at all relevant times, creditors of the Entity Defendants.

73.    The Entity Defendants made the Improper Transfers with actual intent to hinder, delay, or defraud any creditor of Entity Defendants.

74.     Such actual intent is presumed because, as explained above, upon information and belief, the Entity Defendants were not part of a functioning business to finance or develop movies, but, rather, were part of a Ponzi scheme.

75.     In addition, evidence of the Entity Defendants' actual intent includes, without limitation, the following:  (a) the Improper Transfers were made to or for the benefit of insiders, namely the Hogan Defendants, (b) the Improper Transfers were concealed; (c) the Improper Transfers were made with substantially all the Entity Defendants' assets; (d) the Entity Defendants removed or concealed assets; (e) the Entity Defendants received no value in exchange for the Improper Transfers to the Hogan Defendants; and (f) the Entity Defendants were insolvent or became insolvent shortly after the Improper Transfers were made.

76.     Accordingly, under the Uniform Fraudulent Transfer Act ("UFTA"), Montana Code Annotated § 31-2-326 *et seq.*, as well as the Uniform Voidable Transactions Act ("UVTA") and/or other applicable state law, the Improper Transfers are fraudulent, and may be avoided, by Plaintiffs.

77.     Under the UFTA, Montana Code Annotated § 31-2-326 *et seq.*, as well as the UVTA and/or other applicable state law, Plaintiffs may recover judgment for the value of the Improper Transferees from the Hogan Defendants, together with applicable interest, jointly and severally, because they received the

Case 6:21-cv-00059-SEH   Document 1   Filed 08/03/21   Page 22 of 30

Improper Transfers and/or were the persons for whose benefit the transfers were made.

78.    Upon information and belief, the Entity Defendants may have made subsequent transfers from the Improper Transfers to other entities (such as the Other Entity Defendants) that did not receive those transfers in good faith for value (collectively, "Subsequent Transferees"), and those entities ultimately made transfers to the Hogan Defendants, who also did not receive those transfers in good faith for value.  To the extent such subsequent transfers were made, under the UFTA, Montana Code Annotated § 31-2-326 *et seq.*, as well as the UVTA and/or other applicable state law, such subsequent transfers are fraudulent, and may be avoided, by Plaintiffs, and Plaintiffs also may recover judgment for the value of those subsequent transfers, together with applicable interest, from the recipients or the parties for whose benefit the transfers were made, including the Hogan Defendants and the Subsequent Transferees, jointly and severally.

## COUNT THREE
### Avoidance and Recovery of the Improper Transfers as Constructive Fraudulent Transfers Pursuant to Applicable State Law (against Hogan Defendants and Subsequent Transferees)

79.    Plaintiffs incorporate and repeat the allegations of the foregoing paragraphs as if fully set forth herein.

80.    Plaintiffs were, at all relevant times, creditors of the Entity Defendants.

22

81.     The Entity Defendants made the Improper Transfers.

82.     The Entity Defendants did not receive a reasonably equivalent value in exchange for those transfers.

83.     The Entity Defendants either (i) were engaged or were about to engage in a business or a transaction for which the remaining assets of the Entity Defendants were unreasonably small in relation to the business or transaction; or (ii) intended to incur, or believed or reasonably should have believed that they would incur, debts beyond the Entity Defendants' ability to pay as they became due.  Further, because, as explained above, the Entity Defendants were not part of a functioning business, but were a Ponzi scheme, it is presumed that (i) the Entity Defendants were engaged or were about to engage in a business or a transaction for which their remaining assets were unreasonably small in relation to the business or transaction, or (ii) the Entity Defendants intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due.

84.     In addition, or in the alternative, the Entity Defendants made the Improper Transfers without receiving a reasonably equivalent value in exchange for those transfers, and the Entity Defendants were insolvent at that time or the Entity Defendants became insolvent as a result of those transfers.

85.    Accordingly, under the UFTA, Montana Code Annotated § 31-2-326 *et seq.*, as well as the UVTA and/or other applicable state law, the Improper Transfers are fraudulent, and may be avoided, by Plaintiffs.

86.    To the extent that the Entity Defendants owed any debt to the Hogan Defendants, the Improper Transfers made to the Hogan Defendants within the past two years were fraudulent, under the UFTA, Montana Code Annotated § 31-2-326 *et seq.*, as well as other applicable law, because the Hogan Defendants were insiders of the Entity Defendants and the Hogan Defendants had reasonable cause to believe that the Entity Defendants were insolvent.

87.    Under the UFTA, Montana Code Annotated § 31-2-326 *et seq.*, as well as the UVTA and/or other applicable state law, Plaintiffs may recover judgment for the value of the Improper Transferees from the Hogan Defendants, together with applicable interest, jointly and severally, because they received the Improper Transfers and/or were the persons for whose benefit the transfers were made.

88.    Upon information and belief, the Entity Defendants may have made subsequent transfers from the Improper Transfers to other entities (such as the Other Entity Defendants) that did not receive those transfers in good faith for value (collectively, "Subsequent Transferees"), and those entities ultimately made transfers to the Hogan Defendants, who also did not receive those transfers in good

faith for value.  To the extent such subsequent transfers were made, under the UFTA, Montana Code Annotated § 31-2-326 *et seq.*, as well as the UVTA and/or other applicable state law, such subsequent transfers are fraudulent, and may be avoided, by Plaintiffs, and Plaintiffs also may recover judgment for the value of those subsequent transfers, together with applicable interest, from the recipients or the parties for whose benefit the transfers were made, including the Hogan Defendants and the Subsequent Transferees, jointly and severally.

## COUNT FOUR
### Conversion
### (Against All Defendants)

89.     Plaintiffs incorporate and repeat the allegations of the foregoing paragraphs as if fully set forth herein.

90.     Plaintiffs had ownership of and the right to possess the funds they deposited with Paradox Film and Fast Jet for the purpose of financing and developing movies.

91.     By transferring much of those funds to themselves for their personal gain, the Hogan Defendants wrongfully exerted dominion over Plaintiffs' funds in denial of, or inconsistent with, Plaintiffs' right over those funds.

92.     Further, as set forth above, when Plaintiffs learned that $462,000 remained in Paradox Film's bank accounts, and duly requested return of those funds, the Hogan Estate and Paradox Film refused to return them to Plaintiffs.

93.     By refusing to return the funds Plaintiffs had deposited in Paradox

Film, the Hogan Estate and Paradox Film wrongfully exerted dominion over

Plaintiffs' funds in denial of, or inconsistent with, Plaintiffs' right over those funds.

94.     Plaintiffs were directly and proximately harmed by the foregoing

misconduct by Defendants.

## COUNT FIVE
### Breach of Fiduciary Duty
### (Against Hogan Defendants)

95.     Plaintiffs incorporate and repeat the allegations of the foregoing

paragraphs as if fully set forth herein.

96.     As explained above, the Hogan Defendants purportedly were in a

business relationship with Plaintiffs.

97.     As a consequence of Kristina's experience as a lawyer and Brandon's

25 years of experience in the film industry and their position as officers, directors,

managers, or otherwise as controlling Paradise Film and Fast Jet, in which

Plaintiffs deposited their funds, among other reasons, the Hogan Defendants were

in a stronger position than Plaintiffs and were obligated to be acting in the interest

of the Plaintiffs and not in their own behalf with respect to the funds those

Plaintiffs deposited.

98.     The Hogan Defendants induced Plaintiffs to repose trust and

confidence in them.

99.     Accordingly, the Hogan Defendants owed fiduciary duties to Plaintiffs, including a duty to act in good faith in their dealings with Plaintiffs.

100.    The Hogan Defendants breached their fiduciary duties by, among other things, transferring the funds deposited by Plaintiffs with Paradox Film and Fast Jet to themselves rather than for the purpose of financing and developing movies.

101.    Plaintiffs were directly and proximately harmed by the foregoing misconduct by the Hogan Defendants.

## COUNT SIX
### Promissory Estoppel
### (Against Hogan Defendants)

102.    Plaintiffs incorporate and repeat the allegations of the foregoing paragraphs as if fully set forth herein.

103.    The Hogan Defendants promised Plaintiff Helmuth that in exchange for his services in connection with the purported movie financing and development business and his expenditure of personal resources, for which he was not reimbursed, he would realize greater opportunities and returns on the funds he deposited with Fast Jet in the future.

104.    Helmuth relied to his detriment on those promises in contributing both his time and personal resources towards the purported business.

105.   Helmuth's reliance was reasonable and foreseeable.  Indeed, it was specifically induced by the Hogan Defendants.

106.   As a result of his reliance, Helmuth lost more than $122,000 in unreimbursed expenses and lost compensation (and/or opportunity costs) estimated to be in the amount of hundreds of thousands of dollars.

107.   Plaintiff Helmuth was directly and proximately harmed by the foregoing misconduct by the Hogan Defendants.

**COUNT SEVEN**
**Unjust Enrichment**
**(Against All Defendants)**

108.   Plaintiffs incorporate and repeat the allegations of the foregoing paragraphs as if fully set forth herein.

109.   Defendants received a benefit, namely funds provided by Plaintiffs ostensibly for film financing, services provided by Helmuth, and expenses incurred by Helmuth for purposes of film financing and development.

110.   Defendants knew and appreciated the aforementioned benefits.

111.   Under the circumstances above, it would be inequitable for Defendants to retain the benefits provided by Plaintiffs.

112.   Plaintiffs were directly and proximately harmed by the foregoing misconduct by the Defendants.

## COUNT EIGHT
### Punitive Damages
### (Against All Defendants)

113.   Plaintiffs incorporate and repeat the allegations of the foregoing

paragraphs as if fully set forth herein.

114.   Defendants acted with actual malice in harming the Plaintiffs as set

forth above.  Upon information and belief, Defendants deliberately acted in

conscious or intentional disregard of the high probability of harm to Plaintiffs –

including, without limitation, the high probability Plaintiffs would lose all or part

of the funds they deposited with Paradox Film and Fast Jet instead of receiving the

promised return – when Defendants transferred funds to or for the benefit of the

Hogan Defendants and used them for the Hogan Defendants' personal

benefit.  Alternatively, Defendants were at least indifferent to the high probability

that such actions would harm Plaintiffs.

115.   Defendants acted with actual fraud in harming the Plaintiffs as set

forth above.  Upon information and belief, Defendants made multiple

representations to Plaintiffs, with knowledge of their falsity, as set forth above, and

concealed material facts with the purpose of depriving Plaintiffs of their property

or other legal rights which caused Plaintiffs harm, also as set forth above.

116.   Based on Defendants' malicious and fraudulent conduct as alleged above, punitive damages should be awarded under Montana Code Annotated § 27-1-220 *et seq.*

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seek:

1.      a judgment in favor of Plaintiffs and, jointly and severally, against the Hogan Defendants for damages in an amount to be determined at trial, but in no event less than $2 million, plus (i) interest accrued thereon, together with costs and attorneys' fees to the extent available under applicable law, and (ii) punitive damages due to the egregious behavior of the Hogan Defendants, to the extent available under applicable law; and

2.      all other relief the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury of all claims so triable in this action.

Respectfully submitted this 3rd day of August, 2021.


By:     */s/ Paul J. Lopach*
        Paul J. Lopach

        BRYAN CAVE LEIGHTON PAISNER LLP

        *Attorneys for Plaintiffs William Fenech, Jonathan Helmuth, Pinball Run Films, LLC, Jennifer Shenk, Jeffrey Shenk, Kent Oyer, And MX Guardian, LLC*